IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
JUN 18 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:14mj307 |
| ) | |
| ABDULRAHMAN MUNEER ALZAWAWY ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam Coppolo, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"). I have served in HSI since December 2006, and have successfully completed criminal investigator training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I am currently assigned to the Counter-Proliferation Investigations Group where I am tasked with conducting investigations involving the illegal exportation of weapons, technology, and other controlled commodities, as well as the federal criminal statutes that regulate and, in certain instances, prohibit the export of United States controlled commodities, including weapons, weapons systems, services, military equipment and technology.

2. While working for HSI, I am empowered by law to investigate and make arrests for violations of federal law, including the unlawful export from the United States of defense articles and services, as specified in the Arms Export Control Act (AECA), 22 U.S.C. § 2778, and the International

1

Traffic in Arms Regulations (ITAR), 22 C.F.R. Parts 120 et seq.; the illegal export of dual-use items (i.e. items with both civilian and military applications) from the United States to prohibited countries, end-users or end-uses, as specified by the International Emergency Economic Powers Act (IEEPA) 50 U.S.C. Section 1705 and the Export Administration Regulations (EAR); and the illegal export of items from the United Stated in violation of numerous embargoes as specified by IEEPA, executive order and regulation.

3. As a Special Agent with HSI, I am familiar with the federal laws relating to the unlawful export of defense articles and services from the U.S., as specified by AECA and ITAR. The export of defense articles and services is regulated by the U.S. Department of State, Directorate of Defense Trade Control ("DDTC"), the export of dual-use items is regulated by the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"), and United States embargoes are regulated by the U.S. Department of the Treasury, Office of Foreign Asset Controls ("OFAC").

4. I have previously conducted and assisted in numerous investigations and the execution of numerous federal search and arrest warrants in connection with illegal export investigations.

5. As a Special Agent with HSI, I have received considerable training related to identifying the techniques, methods, and procedures employed by groups, organizations, companies, corporations, and individuals to export of items and services in violation of United States export laws.

6. The facts in this affidavit come from my personal knowledge of this case, as well as my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. The export and re-export of certain items of military value, known as defense articles, is governed by the Arms Export Control Act, Title 22, United States Code, Section

2778, and the International Traffic in Arms Regulations ("hereafter ITAR"), Title 22, Code of Federal Regulations, Section 120 et seq. These items are set forth in and constituted in the United States Munitions List, codified in the ITAR at Title 22, Code of Federal Regulations, Section 121.1. Pursuant to this statute and these regulations:

    a. Except as otherwise specifically provided in the ITAR, no defense article designated by the President of the United States under the statute and regulations cited above can be exported without an official license, known as an export license, issued in accordance with the statute and regulations cited above.

    b. Section 123.1 of the ITAR requires that any United States person who intended to export a defense article from the United States was required to obtain approval from the United States Department of State, Directorate of Defense Trade Controls (hereafter "DDTC"), prior to export. A United States person can obtain a license from DDTC by applying for an export license and including information regarding the end-user, freight forwarder, consignee and other parties involved in the export and receipt of the defense articles.

    c. It is unlawful for any person willfully to cause, or aid, abet, induce, procure or permit the commission of any act prohibited by, or the omission of any act required by, the Arms Export Control Act and the international Traffic in Arms Regulations.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of AECA and the ITAR, 22 U.S.C. § 2778(b)(2) and (c) have occurred and are occurring.

## BACKGROUND

9. Defendant Abdulrahman Muneer ALZAWAWY is a Saudi Arabian national, residing in Arlington, Virginia, who has been granted temporary immigration status in the United States as an F-1 student authorized to attend Catholic University in the District of Columbia. As described further herein, ALZAWAWY approached and solicited United States citizens to purchase export-controlled firearm parts in the United States and arranged for those parts to be exported to Saudi Arabia.

10. On December 2, 2013, HSI submitted a specialized records check with the Department of State, Directorate of Defense Trade Controls (DDTC) requesting that the DDTC search for any and all records associated with Abdulrahman Muneer ALZAWAWY. The search conducted by DDTC, revealed that ALZAWAWY has never registered with the DDTC or been issued any license that would allow him to export any items listed on the United States Munitions List (USML) to Saudi Arabia. According to the International Traffic in Arms Regulations, (ITAR) 22 CFR 120.1(c), only U.S. persons and foreign governmental entities in the United States may be granted licenses or other approvals. Foreign persons, other than governments, are not eligible for licenses. ALZAWAWY is a non-immigrant and therefore not classified as a U.S. Person.

11. This investigation began when HSI received information from a concerned company regarding a large purchase of gun parts and accessories to an individual located in the Northern Virginia area. As further detailed below, this investigation revealed that ALZAWAWY had procured export controlled products in an attempt to export them to Saudi Arabia without the required export license from the Department of State. The investigation revealed that ALZAWAWY approached approximately three individuals of Saudi Arabian

descent, who were United States citizens attending local colleges, and asked them to purchase gun parts and accessories for him. ALZAWAWY placed approximately six different orders using these other individuals' identities, addresses and credit card information. For each of these orders, ALZAWAWY made a full reimbursement payment to these individuals, and none of these straw purchasers made any profit from these transactions. Once the orders were received, these individuals would notify ALZAWAWY, and he would come to their residences and pick up the merchandise. Although he had no license to do so, ALZAWAWY intended to ship, and did ship, products to Saudi Arabia, where he could resell them for a profit.

## ONLINE ORDER FROM MidwayUSA

12. As part of this investigation, HSI obtained copies of invoices from MidwayUSA, a retailer of hunting and firearms supplies. These invoices listed the items that were ordered in the name of Tariq Al Tayeb, with a shipping address of 12233 Pender Creek Cir, Apt D, Fairfax, Virginia. MidwayUSA also indicated that the order was placed on October 17, 2013, via MiswayUSA's website, by Mariam Zaidan of 12345 Firestone Ct., Farifax, Virginia. The online order was for the purchase of various ammunition magazines used for AK-47, Sig Sauer P226, and Browning Hi-Power 9mm Luger firearms, and gun accessories, such as rubber grips for these weapons, with a total purchase price of $1,148. According to the original invoice, Mariam Zaidan paid for the order, and it was shipped to Al Tayeb's address. The original order was associated with ALZAWAWY's email address.

13. The following statement is displayed at the bottom of the invoice, which MidwayUSA sends to the email address associated with each order:

> These commodities, technology or software should only be exported from the
> United States in accordance with the Bureau of Industry and Security Regulations

5

(BIS). Diversion contrary to U.S. law is prohibited. Please contact BIS for regulatory information prior to shipment outside of U.S. Further, under Federal Law (the Arms Export Control Act - AECA and International Traffic in Arms Regulations - ITAR), it is unlawful and illegal to export defense items without a U.S. State Department-issued license. See e.g. ITAR Section 121.1 Categories I to III.

14. According to the company, the original order was placed by Mariam Zaidan, with her shipping address. Shortly after the order was placed, the same order was canceled and reordered under Al Tayeb's name. This new order was for a larger quantity of items than the original order.

15. HSI Special Agent Keelie Maiden and ATF Special Agent Richard Dean contacted Al Tayeb and asked for a meeting to discuss an investigation. Al Tayeb agreed to meet with agents. During that meeting, Al Tayeb admitted to receiving a package on October 23, 2013, and stated it was for his friend, ALZAWAWY. Al Tayeb stated that ALZAWAWY asked him if he could use his name, address, phone number and credit card to place an order online. Al Tayeb stated he knew the order was for things like magazines and parts for guns. Al Tayeb also provided information to the agents that ALZAWAWY was going to give some gun parts to a friend that would be flying back to Saudi Arabia soon, possibly on Friday October 25, 2013. Additionally, Al Tayeb stated ALZAWAWY came to his apartment late on the evening of October 23, 2013 to retrieve the package. Al Teyab stated that this was his first and only order for ALZAWAWY. Al Tayeb stated that he made the purchase with his credit card, and ALZAWAWY reimbursed Al Tayeb by transferring $1,400 into Al Teyab's personal bank account.

## DETERMINATION OF PARTS AS DEFENSE ARTICLES

16. On or about February 6, 2014, HSI submitted a license determination (first level determination) to the DDTC for the following items which has been purchased by or on behave of ALZAWAWY:

- AK 47 30 Round Steel Magazine

- AK-47 7.62x39mm 75-Round Drum Steel Gray

- Sig Sauer Magazine Sig Sauer P226 9mm

- Sig Sauer 9mm 15 round Magazine

- Sig Sauer P226 9mm 20 Round Anti-Friction Coated Magazine

- Galil 35 Round Magazine .223

- M1A .308, 20 Round Magazine

- Ultimate Arms Gear Polymer Recoil Buffer

- UTAC AK 47 Universal Weaver/Picatinny Quad Rail hand guard with 12 Rubber Covers

- Tactical Ergonomic Fore grip with pressure switch and battery compartment

- UAG Tactical 4" Fake Inert Display Silencer Suppressor Shroud Can thread on over 14x1 LH Thread Barrel Pattern of the AK-47 Draco Pistol

- UAG Tactical 4 reticle Red Dot Open Reflex Sight with Weaver-Picatinny Rail Mount

- NcStar AK receiver Cover Tri-Rail Weaver Scope Mount (MTAK)

- Tapco AK Razr Muzzle Brake

- Flash Suppressing Compensator

17. On February 7, 2014, the DDTC advised HSI that each item is controlled for export by the U.S. Department of State, except the Tactical Ergonomic Fore grip with pressure

switch. Further, the UAG Tactical 4 reticle red dot open reflex sight is controlled if it meets the specifications of ITAR Category I (f).

18. Additionally, an agent with HSI searched the Exodus Accountability Referral System (EARS) for Pre-Trial Certifications (PTC) (second level determination) from the DDTC for any and all of the items purchased by or on behalf of ALZAWAWY. The search revealed that the AK-47, Sig Sauer P226, and M1A magazines are controlled for export under the ITAR Category I - Firearms, Close Assault Weapons and Combat Shotguns (e) and (h).

## INTERVIEW OF ALZAWAWY

19. On October 24, 2013, HSI Special Agent Keelie Maiden and ATF SA Rich Dean interviewed ALZAWAWY at Catholic University campus in Washington, D.C.

20. During this interview, ALZAWAWY admitted to approaching and using three individuals, all United States citizens, to purchase gun parts and accessories on his behalf. ALZAWAWY admitted his most recent order, using Marian Zaidan's, identity and credit card information, was an online purchase through MidwayUSA. This order was originally in Marian Zaidan's name. Zaidan cancelled the order, however, because she did not want to use her home address, where her parents reside, to receive the items. ALZAWAWY then used Tariq Al Tayeb's identity to place the order instead.

21. ALZAWAWY admitted to agents that he shipped thirteen P226, 9mm ammunition magazines earlier that day (October 24). ALZAWAWY showed the agents the shipping document and receipt for the package, which was shipped to Saudi Arabia via Borderlinx. ALZAWAWY admitted to purchasing two used Sony Play Stations through eBay, removing the "guts" (inside components) and concealing thirteen P226, 9 mm magazines inside. ALZAWAWY explained how he wrapped the magazines in clear bubble wrap and inserted the

firearm magazines inside the Play Stations. ALZAWAWY then placed both Play Stations in a box, delivered the box to a postal facility, and shipped the items to Saudi Arabia. The agents then took, into custody, the remaining firearms parts and accessories, which ALZAWAWY was intending on shipping to Saudi Arabia at a later time.

22. During the interview, ALZAWAWY stated he did not know he needed an export license, however, he did state that he knew he "might" get in trouble with the law (police) in the United States and in Saudi Arabia if exporting these types of products. This was his reason for concealing the gun accessories (9mm magazines) in used Play Stations he purchased on eBay. ALZAWAWY also stated that a couple of shipments were sent directly to his friend, who is part of the royal family in Saudi Arabia, knowing those particular shipments would not be checked by people here in the United States or in Saudi Arabia because of the royal family name on the package.

23. On October 25, 2013, based on the information provided by ALZAWAWY, Special Agents from the HSI Cincinnati Field Office, recovered a parcel located at Borderlinx in Dayton, Ohio that was being shipped to Mohammed Aman in Saudi Arabia. The agents determined the package would not be sent anywhere else in the United States and would in fact be exported from the United States subsequent to leaving the Borderlinx facility. The agents conducted a customs border search on the parcel and recovered two Play Stations that appeared to have been previously pried open. Inside both of the gaming systems agents located a total of 13 MG P226 9mm semi-automatic ammunition magazines. These items were seized by HSI Cincinnati and later transferred to the HSI Washington, D.C. Field Office.

## ADDITIONAL TRANSACTIONS

24. On February 3, 2014, HSI Special Agent Keelie Maiden and ATF Special Agent

Rich Dean interviewed Musab Schannag in reference to his relationship with ALZAWAWY. During this interview, Schannag advised that ALZAWAWY had asked him to purchase gun accessories and parts for him. Schannag agreed and admitted to the agents that he placed three different online orders for gun parts and accessories on behalf of ALZAWAWY. Schannag claimed he placed orders through Amazon, MidwayUSA, and Armory Parts Exchange (APEX). During the interview, Schannag, utilizing his cell phone, pulled up the Amazon order, which showed the order as being placed in 2012. Some of the items ordered appeared to be vests, an AK-47 hand grip, and magazines. Schannag stated he placed the order online using his credit card, and that ALZAWAWY reimbursed him with cash. Schannag stated he did not make a profit from these purchases, and that he was only doing it as a favor for a friend. Schannag claimed that ALZAWAWY said it was cheaper to purchase these gun accessories and parts in the United States than in Saudi Arabia. Schannag claimed that he never saw ALZAWAWY ship the gun parts. However, according to Schannag, there was one incident where ALZAWAWY gave Schannag a box to ship to Saudi Arabia. Schannag claimed that he never shipped the box. Instead, ALZAWAWY picked up the box from Schannag when ALZAWAWY returned from his trip. Following the interview, Schannag sent agents an email containing the three invoices detailing the gun accessories and parts that Schannag ordered for ALZAWAWY. Some of the details of the invoice for APEX include items such as five AK47 30rd Steel magazine; some of the details of the invoice for Midway include items such as four Military surplus Magazine AK-47 7.62x39mm, 75 – round drum steel Gray; some of the details of the invoice for Amazon include items such as one UAG Tactical 4 Reticle Red Dot Reflex Sight with Weaver-Picatinny Rail mount, two UAG Tactical 4" Fake Inert Display Silencer Suppressor Shroud Can thread on (AK-47 Draco pistol), and one UTG Law Enforcement SWAT Vest.

25. In conclusion, your affiant believes ALZAWAWY knowingly exported controlled products to Saudi Arabia without the required licenses. ALZAWAWY took numerous steps to avoid and circumvent law enforcement detection, including utilizing straw purchasers for the parts, concealing gun parts inside a video gaming system, and directing shipments to someone other than the intended purchaser of the commodities.

## CONCLUSION

26. Based upon the foregoing, I believe probable cause exists to conclude that, in or between November 18, 2011 and January 30, 2012, within the Eastern District of Virginia and elsewhere, ALZAWAWY knowingly purchased, exported, and attempted to export defense articles, specifically, controlled gun parts, without a license, in violation of Title 22, United States Code, Section 2778(b)(2) and(c).

Adam Coppolo, Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me
this 18 day of June, 2014
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge